UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MICHAEL WAYNE HESHELMAN,

    Defendant.

                                                                          /

Case No. 1:06-cr-00044-1
Hon. Janet T. Neff

Daniel Y. Mekaru
U.S. Attorney
Attorney for Plaintiff
The Law Building
330 Ionia Avenue, MW
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

Christopher E. Tracy (P46738)
Honigman Miller Schwartz and Cohn LLP
Attorney for Defendant
444 West Michigan Avenue
Kalamazoo, MI 49007-3714
(269) 337-7708

                                                                           /

**DEFENDANT MICHAEL HESHELMAN'S SENTENCING MEMORANDUM**

    This sentencing memorandum is filed on behalf of Michael Heshelman ("Heshelman") and a variety of issues as set forth below for the Court to consider before and at Heshelman's sentencing, which is scheduled to take place on December 17, 2009, at 1:30 pm. The issues addressed include:

    1. Heshelman's objections to the presentence report ("PSR") and the impact those objections would have on his sentencing guideline range is they are sustained by this Court.

    2. Other sentencing considerations as set forth in 18 U.S.C. 3553(a) and relevant case law interpreting that statute, including consideration of Heshelman's medical conditions.

3. The letters of support that have been submitted on Heshelman's behalf. These letters are not attached to this sentencing memorandum, but have been submitted to the Court, the U.S. Probation Office and the U.S. Attorney's Office with a separate letter from Heshelman's counsel.

## INTRODUCTION

The PSR provides a good overview of Heshelman's background, including where he grew up (Battle Creek, Michigan) and related information. Therefore, that biographical information will not be repeated here. There are at least two (2) aspects of Heshelman's background that deserve to be highlighted and both of these will be addressed in more detail below: 1. the portrayal of Heshelman as set forth by friends, family, former co-workers and others in the various letters of support that have been submitted on his behalf; and 2. Heshelman's medical condition (some details being set forth at paragraphs 95-96 of the PSR), which includes a heart attack that occurred in 2004 and for which he continues to take medication.

## OBJECTIONS TO THE PSR

Heshelman's objections to the PSR pertain to adjustments to his offense level and are set forth in the addendum to the PSR and a related objection regarding the actual amount of loss as set forth in paragraph 39 of the PSR. Those objections are addressed in more detail below:

1. Heshelman objects to paragraph 60 of the PSR and the proposed two (2) level enhancement pursuant to U.S.S.G. 2B1.1(b)(9)(B) and (C) (proposing to add 2 levels because the offense involved sophisticated means). Subsection (B) of 2B1.1(b)(9) involves situations where "a substantial part of a fraudulent scheme was committed from outside of the United States ...." That subsection does not apply to the relevant facts in this case. Based on the evidence and testimony presented by the government at Heshelman's trial all of the relevant aspects of the fraudulent scheme took place in the United States. For example, every investor was from the

U.S. All of the meetings leading up to investors participating took place in the U.S. and most of these meetings involved a potential investor meeting with co-defendants Sherwood or Mickelson and Heshelman had very little, if anything, to do with those meetings. All of the monies were invested (with Mr. Moody being the last investor) by no later than 2001. At that time, Heshelman was living or staying either in Florida or occasionally in Michigan or New York. His co-defendants also were living in the U.S. Based on the government's exhibits (summary charts) introduced at trial, all of the monies invested into the alleged fraudulent scheme were transferred out to other accounts here in the U.S. by no later than 2001. It is true that after 2001 (in the 2003 and after time period) that Heshelman moved to Europe (staying in London for period of time and then eventually moving to Zurich, Switzerland), but this fact alone does not equate to a substantial part of the scheme having been committed outside of the U.S. Accordingly, subsection (B) is not relevant and this Court should not tack on a two level enhancement based on that subsection.

    Subsection (C) of 2B1.1(b)(9) involves situations where "the offense otherwise involved sophisticated means." That subsection also does not apply to the relevant facts in this case. The government's own witnesses, including the FBI agent who tracked the flow of monies that were invested, testified that it was very simple and easy to follow where the monies went in this case. There was no use of off-shore accounts and no sophisticated use of other accounts at all. The monies simply were deposited into an account maintained by Mr. Warner and then were moved to other accounts. For example, if monies were being paid to Sherwood, then the monies were simply transferred from the Warner account to Sherwood's account. If the monies were being used to pay for travel expenses or a hotel room, then a transfer occurred from the Warner account. If the investors (some received their entire investment back) were being paid back, then

a simple transfer from the Warner account to the particular investor's account took place. This was not a sophisticated scheme, and therefore, that subsection also does not apply. The applicable Commentary to 2B1.1(b)(9) also supports this conclusion. The Commentary provides examples about what amounts to "sophisticated means" and none of those examples exist in this case. There was no hiding of assets or transactions. On the contrary, in this case an attorney trust account (Warner's account) was used, which is a fairly typical way to set things up. There also was no use of any fictitious entities, corporate shells or offshore financial accounts. Therefore, this Court should not grant a two level adjustment as proposed in paragraph 60 of the PSR.

     2. Heshelman objects to paragraph 67 of the PSR and the proposed two (2) level enhancement pursuant to U.S.S.G. 2S1.1(b)(3) (proposing to add 2 levels because the offense involved sophisticated laundering). The reason for objecting to this proposed enhancement and why this Court should not grant the adjustment parallels the discussion above related to the proposed enhancement under 2B1.1(b)(9)(C). The Commentary for 2S1.1 indicates that "'sophisticated laundering' means complex or intricate offense conduct pertaining to the execution of concealment of the 18 U.S.C. 1956 offense." The Commentary furthers indicates that sophisticated laundering typically involves:

>  (i) fictitious entities;
>  (ii) shell corporations;
>  (iii) two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or
>  (iv) offshore financial accounts.

    As discussed above, none of those typical situations to justify a sophisticated laundering enhancement exist in this case. No fictitious entities or shell corporations were used. There was no layering of transactions. The invested funds went into Warner's account (all of which was

laid out in the investment agreements and documents provided to the investors) and then any future transfer of the monies occurred because: 1. someone (e.g., Sherwood, Mickelson or Heshelman) was being paid; 2. an investor was being paid back in part or sometimes in full; 3. monies were being used to pay for expenses (travel costs, hotel rooms and other expenses); or the monies were being invested with others. There was no sophisticated layering related to the transactions or movement of the invested monies and there was no use of offshore financial accounts. The government may try to suggest that accounts that Heshelman established in London or in Zurich quality as offshore financial accounts, but factually that is not what the Sentencing Commission is driving at when it refers to offshore accounts. Heshelman was living and working in London and then in Zurich. He set up accounts to conduct business in both of those locations. The accounts were under the same corporate name he used in the U.S. and none of the invested monies were directly deposited into those accounts. Accordingly, this Court should not grant a two level adjustment as proposed in paragraph 67 of the PSR.

    3. Heshelman objects to paragraphs 62 and 69 of the PSR and the proposed four (4) level enhancement pursuant to U.S.S.G. 3B1.1(a) (proposing to add 4 levels because Heshelman was an organizer or leader). The government has suggested that Heshelman played an essential role in the fraudulent scheme (he developed the plan, etc.), but courts do not grant this enhancement because someone played an essential role. *U.S. v. Litchfield*, 959 F.2d 1514 (10th Cir. 1992). In addition, just because a defendant possesses leadership qualities is not sufficient to support a role increase. *U.S. v. Jordan*, 291 F.3d 1091 (9th Cir. 2002). In this case, it was Heshelman's co-defendants, Sherwood and Mickelson, who took the lead with respect to meeting with the investors and Sherwood and Mickelson often re-directed funds from investors to other schemes the two of them had going which had nothing to do with the investments that Heshelman was

5

attempting to pursue. In this case, one has to very carefully consider what Heshelman did and what he was involved with as compared to what Sherwood, Mickelson or others were doing. The facts do not support that Heshelman was an organizer or leader over Sherwood or Mickelson. The two of them often acted independent of Heshelman and they clearly called their own shots. Monies were paid from the Warner account to Sherwood and Mickelson at Heshelman's direction, but that involvement alone does not constitute Heshelman being an organizer or leader. Furthermore, there were not five or more participants involved in the criminal activity. The only people charged with being involved with the criminal activity are Heshelman, Sherwood and Mickelson. No evidence was offered that other people (including Messrs. Featherstone, Green, DeTour or Warner) were involved in the actual criminal activity as compared to doing administrative or other functions. The fraudulent scheme also was not "otherwise extensive." As explained above, it was a very simple investment scheme. Accordingly, this Court should not grant the four (4) level enhancement under 3B1.1(a). If the Court determines an adjustment is proper for Heshelman's role in the offense, then at most the 3B1.1(c) two (2) level adjustment could be applied given the facts and circumstances in this case.

  4. Heshelman objects to paragraph 39 of the PSR. The actual loss as discussed in 2B1.1 and the Commentary to that provision "means the reasonably foreseeable pecuniary harm that resulted from the offense. The Commentary in Application Note 3(E) also explains how loss needs to be reduced by money that is returned and/or by the fair market value of property returned or received by a victim. In paragraph 39 of the PSR, certain credits are accounted for to reduce the total loss down to the current proposed loss figure of approximately $7 million, but no credit is provided for with respect to monies or property returned to Mr. Moody. At a

minimum, based on evidence submitted during the trial, Mr. Moody received property, including the bus that was purchased and also Sherwood's home that he foreclosed on and was able to sell. The specific value of those items was not clearly identified during the trial, but undoubtedly the return in value to Mr. Moody was clearly in the hundreds of thousands of dollars, which would decrease the total loss below $7 million. Pursuant to 2B1.1(b)(1), the applicable subsection then would be (J) rather than (K), and therefore, Heshelman's total offense level needs to reduced by two (2) points.

## SECTION 3553(a) SENTENCING CONSIDERATIONS

Pursuant to 18 U.S.C. 3553(a), this Court is to consider the following in determining a proper sentence for Heshelman: (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. 18 U.S.C. 3553(a); *Rita v. U.S.*, 551 U.S. 338 (2007). The Court is very familiar with these sentencing considerations, so this memorandum will not address each of these separately, but rather will focus on several key points and issues as discussed below.

If the Court overrules Heshelman's objections above, then Heshelman's potential sentence under the guidelines is substantial: 188-235 months. Even if this Court were to sustain all of Heshelman's objections, then the advisory guideline range for his sentence still would be substantial at 78-97 months. Mickelson, one of his co-defendants, was recently sentenced by this Court to 36 months. So, there are a variety of issues this Court can and should consider in trying to reach a fair and reasonable sentence for Heshelman, including:

**1. His Medical Condition and Age**: Heshelman had a heart attack in 2004 and continues to battle other medical condition as set forth in paragraphs 95-96 of the PSR. He continues to receive medication for these conditions, and it is very important that he be placed in a BOP facility that will be able to properly assess and monitor his health. This Court as explained in *Rita* and other cases can and should consider Heshelman's medical condition and other factors. 18 U.S.C. 3553(a)(2)(D) also reinforces that this Court should consider the medical care that a defendant will need in determining what the appropriate sentence should be. Similarly, courts have properly considered the age of a defendant and have noted that older defendants pose less risk of recidivism. Heshelman is 60 years old. If this Court were to impose a sentence even in the range (78 to 97 months) where all of Heshelman's objections were sustained, he still would serve approximately 7 to 8 years in prison and by the time he was released he would be nearly 70 years old. The courts have acknowledged and accepted the studies conducted by the Sentencing Commission and others showing a much lower rate of recidivism by defendants over the age of 40 (let alone over the age of 60). *U.S. v. Lucania*. 379 F.Supp.2d 288, 297 (E.D.N.Y. 2005); *U.S. v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005).

**2. Potential for Disparity in Sentencing**: The third co-defendant, Sherwood, is not scheduled to be sentenced by this Court until February 2010 and Sherwood's circumstances differ somewhat because of the current allegations made against him by the government that he may have committed perjury when he testified during Heshelman's trial. Obviously, we do not know at this time what the Court's sentenced will be for Sherwood. Co-defendant Mickelson was recently sentenced by this Court to 36 months imprisonment. Even if this Court went to the low end of a the potential sentencing range (78-97) as set forth on page 3 of the addendum to the PSR, Heshelman's sentence would be at least two times more than what Mickelson received.

This Court can and should consider the issue of unwarranted disparities in the sentences it makes. 18 U.S.C. 3553(a)(6). As part of this process, the Court also can consider the efforts (with understanding that results matter as well) made or not made by the various co-defendants involved with the investments and investors in this case. As discussed below in the letters of support section, there are people who invested or were involved with the investments that acknowledge the significant efforts that Heshelman continued to make up until the time of his arrest in late 2008 to try to get an investment in place that could potentially result in the return of monies invested by people involved in this case. That type of effort was never made by Sherwood or Mickelson. Furthermore, Heshelman never bought an extravagant home or car or anything along those lines with the monies that were invested. By all accounts, he lived a pretty modest life in Zurich from 2003 to 2008.

## LETTERS OF SUPPORT AND FULLER PICTURE AND UNDERSTANDING OF HESHELMAN

The Court will be able to read any letters of support or victim letters and decide what weight or bearing to give those communications. By the sheer nature of a criminal case (or for that matter any case) that comes before this Court, the judge trying to fashion an appropriate sentence is limited in her ability to see and understand all of the facts and background that may be relevant. That also applies to what the government or the defense counsel knows and fully understands. Even under the best of circumstances, we are limited by time, by other cases and by a variety of other influences. The letters of support that have been submitted by people on behalf of Heshelman shed considerable light on other aspects of him as a person, a brother, a nephew, a co-worker, etc. None of us involved with this case (this very limited aspect of Heshelman's life and existence) have had a chance to experience much, if any, of these other perspectives of Heshelman. So, I would encourage this Court to carefully review the letters of

9

support in this vein.  There is no doubt that Heshelman's actions or inactions regarding the investment monies that people entrusted him with and the results (currently being that much of the invested monies have not been returned) have caused a lot of pain and anguish to many people.  Nevertheless, some of the people that have felt that loss directly or through their clients have written letters of support on behalf of Heshelman.  As far as we are aware, those type of letters were not written on behalf of Mickelson or Sherwood.  We respectfully request that the Court review and consider the letters and these facts in determining what an appropriate sentence is for Heshelman.

## CONCLUSION

  Heshelman and his counsel will be prepared to address the issues raised in this sentencing memorandum with the Court at his sentencing.

            Respectfully submitted,

            By: /s/ Christopher E. Tracy
              Christopher E. Tracy (P46738)
            HONIGMAN MILLER SCHWARTZ AND COHN LLP
            444 West Michigan Avenue
            Kalamazoo, MI 49007-3714
            (269) 337-7708

Dated:  December 11, 2009

KALAMAZOO.43585.1